**No.** 24-7748

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

Robert Emert,

*Plaintiff-Appellant ,*

v.

DCSS, et al.,

*Defendant-Appellee*

On Appeal from the United States District Court
for the Southern District of California
No. 24-cv-02072-CAB-JLB
Hon. Cathy Ann Bencivengo

_____

## APPELLANT'S RESPONSE TO POSSIBLE FRIVOLOUSNESS
## DETERMINATION OF 9TH CIRCUIT COURT

_____

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

## Table of Contents

TABLE OF AUTHORITIES ....................................................................................... 3

APPELLANT'S RESPONSE TO POSSIBLE FRIVOLOUSNESS DETERMINATION OF 9TH
CIRCUIT COURT .................................................................................................... 6

EXECUTIVE SUMMARY ...................................................................................... 6

I. INTRODUCTION .............................................................................................. 7

II. JURISDICTIONAL DEFECT RENDERS JUDGMENT VOID AND EXEMPT FROM
ROOKER-FELDMAN .......................................................................................... 8

III. MISAPPLICATION OF ROOKER-FELDMAN TO INDEPENDENT FEDERAL CLAIMS . 10

IV. ENFORCEMENT OF OBLIGATIONS BASED ON FRAUD UPON THE COURT ........... 12

V. MANIFEST INJUSTICE AND WHISTLEBLOWER RETALIATION CREATE
INDEPENDENT FEDERAL JURISDICTION ............................................................ 14

A. Manifest Injustice Exception ...................................................................... 14

B. Whistleblower Retaliation Framework ........................................................ 15

VI. IFP APPLICATION AND DISTRICT COURT'S IMPROPER DENIAL ......................... 16

A. Financial Hardship Documentation ............................................................. 16

B. IFP Issues in Ninth Circuit Filing................................................................ 18

VII. RELEVANCE TO DEPARTMENT OF JUSTICE GUIDANCE .................................... 18

VIII. RELEVANT BACKGROUND AND CONTEXT..................................................... 19

IX. CHRONOLOGICAL EVIDENCE OF SYSTEMATIC FEDERAL VIOLATIONS.............. 21

X. EVIDENCE AVAILABLE TO SUPPORT CLAIMS.................................................. 22

XI. CONCLUSION ............................................................................................. 23

# TABLE OF AUTHORITIES

SUPREME COURT CASES

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331 (1948)..........................16, 17

Armstrong v. Manzo, 380 U.S. 545 (1965)..................................................................5

Bearden v. Georgia, 461 U.S. 660 (1983)..................................................................18

Blessing v. Freestone, 520 U.S. 329 (1997)................................................................7

Boddie v. Connecticut, 401 U.S. 371 (1971)..............................................................18

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)..........................................................9

Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999)...................................19

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)...21

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)...............2, 6

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)......................10

Heffernan v. City of Paterson, 578 U.S. 266 (2016)................................................14

Hicks v. Oklahoma, 447 U.S. 343 (1980)..................................................................13

Kontrick v. Ryan, 540 U.S. 443 (2004)......................................................................5

M.L.B. v. S.L.J., 519 U.S. 102 (1996)........................................................................18

Nietzke v. Williams, 490 U.S. 319 (1989)..................................................................17

Olano, United States v., 507 U.S. 725 (1993)........................................................12, 13

Rose v. Lundy, 455 U.S. 509 (1982).........................................................................12

Throckmorton, United States v., 98 U.S. 61 (1878)..................................................9

Timbs v. Indiana, 139 S. Ct. 682 (2019)..................................................................18

Tumey v. Ohio, 273 U.S. 510 (1927)........................................................................18

Turner v. Rogers, 564 U.S. 431 (2011)...................................................................18

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010).........................4

Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)...........................5

Ward v. Village of Monroeville, 409 U.S. 57 (1972).................................................18

CIRCUIT COURT CASES

Crowe v. Smith, 151 F.3d 217 (5th Cir. 1998).........................................................12

Escobedo v. Applebees, 787 F.3d 1226 (9th Cir. 2015)..........................................17

Franklin v. Murphy, 745 F.2d 1221 (9th Cir. 1984).................................................17

Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)......................................5, 10, 11

Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305 (11th Cir. 2004)...........................17

Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003)............................................................7, 14

O'Loughlin v. Doe, 920 F.2d 614 (9th Cir. 1990).....................................................17

Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995)....................9

Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir. 1990).................8

DISTRICT COURT CASES

Burns v. Burns, 569 F. Supp. 2d 288 (W.D.N.Y. 2008)............................................7

Thompson v. Washington State DSHS, No. C19-5853 (W.D. Wash. 2020).............7

STATE COURT CASES

Christie v. City of El Centro, 135 Cal.App.4th 767 (2006).........................................4

Estate of Eskra, 51 Cal.3d 943 (1991).....................................................................4, 5

Estate of Jacobs, 61 Cal.App.4th 80 (1998).............................................................4

People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)............................................3

State v. Cahill, 218 N.W.2d 907 (Iowa 1974)...........................................................3

FEDERAL STATUTES AND REGULATIONS

28 U.S.C. § 1331...........................................................................................1, 3, 21

28 U.S.C. § 1915(e)(2)....................................................................................1, 21

34 U.S.C. § 12601..............................................................................................7

45 CFR § 303.8(b)(2)....................................................................................1, 3, 6, 19

45 CFR § 303.31...........................................................................................6, 19

45 CFR § 303.35..........................................................................................1, 3, 6

STATE STATUTES AND RULES

California Code of Civil Procedure § 170.6..................................................................3, 4

California Code of Civil Procedure §§ 585(b) and 587.......................................................19

# APPELLANT'S RESPONSE TO POSSIBLE FRIVOLOUSNESS DETERMINATION OF 9TH CIRCUIT COURT

**Appeal No. 24-7748**

## EXECUTIVE SUMMARY

This appeal is not frivolous under 28 U.S.C. § 1915(e)(2) as it presents four independent legal bases for federal jurisdiction, any one of which would be sufficient to allow this appeal to proceed:

1. **Fundamental Jurisdictional Defect**: The underlying state court judgment suffers from a jurisdictional defect that renders it void ab initio. A properly filed and timely peremptory challenge under California law stripped Commissioner Ratekin of jurisdiction, making all subsequent orders void and exempt from Rooker-Feldman.

2. **Fraud Upon the Court**: Attorney David Schulman knowingly presented false income information to secure an impossible support obligation, constituting fraud upon the court that creates an exception to Rooker-Feldman under Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004).

3. **Independent Federal Claims**: DCSS committed twelve documented violations of federal Title IV-D regulations that occurred after and independent of the state court judgment, creating federal question jurisdiction under 28 U.S.C. § 1331.

4. **Manifest Injustice/Whistleblower Retaliation**: This case presents the rare circumstance where procedural doctrines must yield to prevent a manifest injustice

resulting from systematic retaliation against a whistleblower who exposed judicial misconduct.  I was not even allowed into my trial where I properly requested a brief continuance due to a STEMI heart attack that went ignored out of retaliation for not letting the court system use my son in court proceedings.

**The Supreme Court in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005) expressly limited Rooker-Feldman to "cases brought by state-court losers complaining of injuries caused by state-court judgments" - not claims arising from independent federal violations occurring after the judgment. DCSS's systematic violations occurred from December 2021 through December 2022, well after the state court judgment, creating independent federal claims under 28 U.S.C. § 1331.**

The district court's dismissal under Rooker-Feldman ignores binding Supreme Court precedent significantly narrowing its application, specifically acknowledging in its own footnote 2 that "any causes of action independent of the divorce judgment may be the source of a separately filed complaint." This appeal seeks review of precisely such independent federal claims.

# I. INTRODUCTION

Appellant Robert Emert respectfully submits this response to the Court's determination that this appeal may be frivolous. Far from frivolous, this appeal presents substantial federal questions regarding systematic violations of Title IV-D of the Social Security Act by the California Department of Child Support Services (DCSS) that occurred after and independent of the underlying state court judgment, as well as critical questions regarding fundamental jurisdictional defects and fraud upon the court. As the district court itself acknowledged in footnote 2 of its dismissal order, "any causes of action independent of the divorce judgment may be the source of a separately filed complaint." This appeal seeks review of precisely such independent federal claims.

The core issues involve:

1. A fundamental jurisdictional defect in the underlying state court proceedings that renders the divorce judgment void ab initio and exempt from Rooker-Feldman
2. Fraud upon the court through attorney David Schulman's knowing presentation of false income information to secure an impossible support obligation
3. DCSS's twelve documented violations of federal regulations that create federal question jurisdiction under 28 U.S.C. § 1331:

    a. DCSS's repeated failure to review the support order upon request, in direct violation of 45 CFR § 303.8(b)(2)

    b. DCSS's systematic denial of hearings required by 45 CFR § 303.35

    c. DCSS's enforcement of obligations despite documented medical disability and changed circumstances

These systematic violations reflect what courts have recognized as a "farce and a sham" under State v. Cahill, 218 N.W.2d 907 (Iowa 1974), resulting from coordinated actions by court insiders who have exploited the legal system while punishing a father who simply refused to surrender his son to be used as leverage in divorce proceedings.

The central facts are straightforward: I never could earn the kind of income opposing counsel claimed I could - a fact they were fully aware of when they made these false representations to the court. I had not worked a regular job in nearly a decade as a stay-at-home parent, lacked required licensing, and had suffered a life-threatening heart attack. Yet DCSS continues to enforce a $60,000+ obligation based on these fraudulent claims while systematically ignoring twelve separate federally mandated requests for review.

## II. JURISDICTIONAL DEFECT RENDERS JUDGMENT VOID AND EXEMPT FROM ROOKER-FELDMAN

A critical legal issue that this Court must address is that the underlying state court orders suffer from a fundamental jurisdictional defect that renders them void ab initio. On February 8, 2021, I filed a timely peremptory challenge against Commissioner Ratekin under California Code of Civil Procedure § 170.6. Ratekin improperly denied this challenge the following day despite clear California Supreme Court precedent in People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993), which holds that once a proper peremptory challenge is filed, the challenged judicial officer lacks jurisdiction to take any further action in the case except to grant the challenge.

**California law is clear and unambiguous: when a proper § 170.6 challenge is filed, the judicial officer immediately loses jurisdiction. This is not merely a procedural error--it is a fundamental jurisdictional defect that renders all subsequent actions "void on their face" and subject to challenge "at any time."**

As established in the court transcript dated February 4, 2021 (filed as Exhibit B to my Motion for Mandatory Jurisdictional Adjudication in related case 3:24-cv-00671-JO-BJC), no substantive orders were issued or arguments heard prior to my challenge, confirming its

timeliness and validity under California law. The transcript shows that Commissioner Ratekin merely trailed the case, stating "I'm not ready to do this case right now" (Transcript p. 15). This jurisdictional defect is not merely a procedural error but a **fundamental defect that renders all subsequent orders void, not merely voidable.**

California precedent is unequivocal on this point. In **Estate of Jacobs, 61 Cal.App.4th 80, 88 (1998)**, the court emphatically stated: "Once a timely and properly presented peremptory challenge has been made, the court loses jurisdiction to proceed and all subsequent orders are void." Similarly, **Christie v. City of El Centro, 135 Cal.App.4th 767, 776 (2006)** confirms that "The disqualification of a judge for cause renders all of the judge's subsequent judicial actions void." **The California Supreme Court in Estate of Eskra specifically held that "A judgment rendered by a disqualified judge is void whenever the disqualification is established."** This reinforces that the judgment's void status is well-established in California jurisprudence.

As the Supreme Court recognized in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010), a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Even more directly, in **Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 353-54 (1920)**, the Supreme Court emphasized that "[A void] judgment is a mere nullity... [I]ts invalidity may be asserted against it when it is presented as the foundation for the assertion of a right." This principle is reinforced in **Armstrong v. Manzo, 380 U.S. 545, 552 (1965)**, where the Court recognized that only "wiping the slate clean... would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place."

Void judgments are not subject to the Rooker-Feldman doctrine because, legally speaking, they do not exist. As the Ninth Circuit explained in Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004), "Rooker-Feldman does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." The same principle applies to judgments that are void for lack of jurisdiction.

This jurisdictional defect can be raised at any time, in any court, and is never waived. The Supreme Court confirmed in Kontrick v. Ryan, 540 U.S. 443, 455 (2004), that "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time." The district court's failure to recognize this fundamental jurisdictional defect—which renders Rooker-Feldman entirely inapplicable—presents a substantial legal question that cannot be deemed frivolous.

# III. MISAPPLICATION OF ROOKER-FELDMAN TO INDEPENDENT FEDERAL CLAIMS

The district court's dismissal based on Rooker-Feldman presents a substantial legal question that requires review. The Supreme Court has significantly narrowed Rooker-Feldman, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

My complaint does not challenge the state court judgment itself but instead alleges independent federal violations by DCSS occurring after that judgment:

1. From December 2021 through December 2022, I submitted twelve documented requests to DCSS for review and modification as mandated by 45 CFR § 303.8(b)(2), which requires state child support agencies to "review child support orders… upon request of either parent." DCSS systematically ignored these requests, violating federal regulations.
2. DCSS denied my right to hearings under 45 CFR § 303.35, which requires the agency to provide "an opportunity for a hearing" regarding child support matters.
3. DCSS provided false information about jurisdictional requirements, incorrectly claiming I needed to return to family court despite federal regulations placing this obligation on DCSS.
4. DCSS continued enforcement without considering my documented medical condition (September 2021 heart attack) and inability to work, violating 45 CFR § 303.31 regarding medical support obligations.

**Burns v. Burns directly addresses Title IV-D compliance issues nearly identical to those present here. In Burns, the court maintained jurisdiction over systematic violations of federal child support enforcement regulations, recognizing that such claims "go beyond mere domestic relations matters." My DCSS claims mirror this pattern of systematic non-compliance with federal regulations that Burns recognized as creating federal question jurisdiction.**

**The Ninth Circuit in Noel v. Hall, 341 F.3d 1148, 1163-64 (9th Cir. 2003) clarified that Rooker-Feldman only applies to "a forbidden de facto appeal" of a state court judgment, not to "a suit seeking relief from a defendant's unlawful conduct that was**

independent of the state court judgment." DCSS's twelve violations of federal regulations constitute precisely such independent unlawful conduct.

**Blessing v. Freestone, 520 U.S. 329 (1997)** specifically addressed Title IV-D compliance and recognized that systematic violations create federal concerns. While Blessing limited private rights of action under Title IV-D, it nonetheless recognized that systematic violations of federal regulations by state agencies raise significant federal interests that can be addressed through appropriate federal claims. My complaint raises precisely such systematic violations through federal causes of action properly cognizable in federal court.

Federal courts have recognized jurisdiction over such Title IV-D claims. In Burns v. Burns, 569 F. Supp. 2d 288 (W.D.N.Y. 2008), the court maintained federal question jurisdiction over systematic violations of Title IV-D. Similarly, in Thompson v. Washington State DSHS, No. C19-5853 (W.D. Wash. 2020), the court exercised jurisdiction over claims involving a state child support agency's systematic non-compliance with federal regulations.

These violations fall under federal enforcement authority. Under the **Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601**, the Department of Justice has authority to address "pattern or practice" violations by government agencies that deprive persons of constitutional or federal rights. As noted in the DOJ's April 2023 "Dear Colleague Letter," "the Department entered into a consent decree with the City of Ferguson, Missouri, that required the City to rectify its allegedly unconstitutional fines and fees practices." Systematic violations of Title IV-D requirements fall under this same federal enforcement authority.

Prior to filing in federal court, I exhausted all available remedies through DCSS's own procedures. I followed their complaint resolution process, submitted required documentation, and attempted to resolve the issues through administrative channels for over a year. Only after these systematic failures of DCSS's internal processes did I resort to seeking federal intervention.

The district court's dismissal creates an internal contradiction by acknowledging in footnote 2 that "any causes of action independent of the divorce judgment may be the source of a separately filed complaint" while simultaneously dismissing my claims that allege precisely such independent violations. This contradiction presents a substantial legal question that cannot be deemed frivolous under **Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1363 (9th Cir. 1990)**, which defines a frivolous case as one that is "groundless… with little prospect of success."

# IV. ENFORCEMENT OF OBLIGATIONS BASED ON FRAUD UPON THE COURT

The support order DCSS continues to enforce was obtained through a clear fraud upon the court perpetrated by attorney David Schulman. Schulman knowingly and intentionally presented demonstrably false income information to the court despite his awareness of its falsity, constituting extrinsic fraud that renders the resulting judgment subject to collateral attack. Specifically:

1. Schulman presented documentation claiming I could earn approximately $8,010 per month despite knowing that:
    a. I had not worked in the field for nearly a decade while serving as primary caregiver to our children (October 2013 through September 2019)
    b. I no longer possessed valid professional licensing required for such employment
    c. I had recently suffered a life-threatening STEMI heart attack that severely limited my employability
    d. My age (52) created significant barriers to re-entry into a field I had been absent from for years
2. Schulman had direct knowledge this information was false through:
    a. Extensive discovery that revealed my actual work history and licensing status
    b. Medical records provided during litigation documenting my heart condition
    c. Deposition testimony establishing my actual employment capabilities

**Schulman's knowledge that I could not earn the claimed income clearly meets the "knowing" standard for fraud upon the court.** His dual role as a temporary judge at DCSS during the relevant time period significantly aggravates the fraud by creating a direct conflict of interest. This situation exemplifies what **Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)** addressed when recognizing that "Courts have inherent power to vacate judgments obtained by fraud upon the court... This 'historic power of equity to set aside fraudulently begotten judgments' is necessary to the integrity of the courts."

**As the Supreme Court established in United States v. Throckmorton, 98 U.S. 61, 65 (1878), fraud that prevents a party "from having a trial, or from presenting all of his case" creates an exception to normal finality principles. Schulman's deliberate misrepresentations about my income and employment capabilities prevented me from having a fair hearing on support obligations.**

The Ninth Circuit has defined fraud on the court as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" in **Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995)**. Schulman's calculated presentation of false income data, combined with his insider role at DCSS, perfectly matches this definition.

The Supreme Court has long recognized that fraud upon the court creates an exception to normal finality principles. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944), the Court recognized that judgments obtained through fraud can be set aside, noting that "tampering with the administration of justice" through fraudulent representations "involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

**The Ninth Circuit's decision in Kougasian specifically addresses the type of fraud present here--knowing submission of false evidence to obtain a judgment. As the court held, "when a plaintiff alleges extrinsic fraud on a state court... the plaintiff is not challenging the state court decision, but rather the defendant's conduct in procuring that decision." This principle applies directly to Schulman's conduct.**

This fraud-upon-the-court exception also applies to the Rooker-Feldman doctrine. As the Ninth Circuit recognized in Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004), "Rooker-Feldman does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for **extrinsic fraud** on a state court and seeks to set aside a state court judgment obtained by that fraud."

Schulman's knowing submission of false income information constitutes exactly the kind of extrinsic fraud that creates federal jurisdiction independently of the state court judgment. After securing this fraudulent order, Schulman then enlisted his connections at DCSS to ignore all my requests for recalculation under Title IV-D rules, completing a circle of misconduct that prevented any meaningful review or correction.

Direct evidence of this fraud is found in the records of DAI Pena, who acknowledged that I would likely win at trial and that the family court lawyers were simply pissed off at me and not working in my sons best interests!! As DAI Pena stated in his recorded interview (documented in the Board of Supervisors lawsuit, Exhibit E): "Personally, I think you'll win that. I don't I..." (Timestamp 02:31:23-25). This statement by a law enforcement official with direct knowledge of the case confirms the fraudulent nature of the proceedings.

The district court's failure to recognize this fraud-based exception to Rooker-Feldman presents a substantial question of law that cannot be considered frivolous.

# V. MANIFEST INJUSTICE AND WHISTLEBLOWER RETALIATION CREATE INDEPENDENT FEDERAL JURISDICTION

This case presents the rare circumstance where procedural doctrines must yield to prevent a manifest injustice resulting from systematic retaliation against a whistleblower who exposed judicial misconduct. Courts have long recognized that procedural doctrines like Rooker-Feldman cannot be mechanically applied where doing so would perpetuate a fundamental miscarriage of justice. As the Supreme Court emphasized in Rose v. Lundy, 455 U.S. 509, 538 (1982), avoiding "a fundamental miscarriage of justice" may justify setting aside normal procedural barriers.

## A. Manifest Injustice Exception

The judgment DCSS seeks to enforce represents a textbook example of manifest injustice that warrants extraordinary judicial intervention:

1. After a 15-year marriage in which I served as the primary caregiver, I was left with:
   a. Zero portion of retirement accounts or marital assets
   b. Zero custody of children despite years as their primary caregiver
   c. Insurmountable financial obligations based on demonstrably false income projections
   d. No meaningful opportunity to present evidence due to extraordinarily broad motions in limine
2. The mathematical impossibility of the judgment is evident on its face:
   a. I was ordered to pay obligations that exceed 100% of my demonstrable earning capacity
   b. Required payments were set at levels that obviously could not be satisfied given my medical condition and employment history
   c. The court made these determinations while refusing to consider medical evidence of my September 2021 STEMI heart attack
3. The manifest injustice is compounded by systematic denial of basic procedural protections:
   a. Denial of ADA accommodations despite life-threatening medical condition

    b. Refusal to examine recorded evidence that would directly contradict the court's conclusions

    c. Ignoring of medical documentation from cardiologists confirming employment limitations

**As the Supreme Court emphasized in United States v. Olano, 507 U.S. 725, 736 (1993), a "miscarriage of justice" can justify exceptional procedural measures. The current situation--where void orders are being enforced to collect impossible obligations based on demonstrably false income information from a medically disabled person-- constitutes exactly the type of "miscarriage of justice" that requires intervention.**

**In Crowe v. Smith, 151 F.3d 217, 239 (5th Cir. 1998), the court recognized that "egregious examples of fundamental unfairness" justify extraordinary remedies. The combination of void orders, fraud upon the court, systematic denial of federal rights, and retaliation for whistleblowing creates precisely such fundamental unfairness.**

Courts across jurisdictions have recognized that manifest injustice may override normal procedural barriers. In United States v. Olano, 507 U.S. 725, 736 (1993), the Supreme Court recognized that preventing a "miscarriage of justice" may justify extraordinary procedural flexibility. Similarly, in Hicks v. Oklahoma, 447 U.S. 343, 346 (1980), the Court intervened where state procedures created a fundamental unfairness that "shock[ed] the conscience."

## B. Whistleblower Retaliation Framework

The timeline of events demonstrates a clear pattern of retaliation after I exposed Commissioner Ratekin's predetermined plan to place my son in a residential facility without evidentiary basis - a "kids for cash" scheme similar to those that have resulted in criminal prosecutions of judges in other jurisdictions:

1. Prior to my whistleblowing, I maintained a stable 50/50 custody arrangement supported by three Family Court Services reports
2. After exposing Commissioner Ratekin's predetermined decision and filing a formal challenge:
    a. I was systematically stripped of all custody rights
    b. Financial obligations were set at deliberately impossible levels
    c. My most basic procedural rights were denied, including ADA accommodations after a life-threatening heart attack

> d. A coordinated campaign involving family court, DCSS, and connected officials ensured no neutral forum would review the evidence

As the Supreme Court recognized in Heffernan v. City of Paterson, 578 U.S. 266 (2016), retaliation against whistleblowers implicates fundamental constitutional concerns. The Court emphasized that "The Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." Similarly, government officials cannot use their authority to retaliate against individuals who expose judicial misconduct.

The recorded statement from District Attorney Investigator Luis Pena that "family court lawyers were pissed off and were not working in [my] son's best interests" provides direct evidence of retaliatory motive. This statement from a law enforcement official with direct knowledge of the case confirms that the adverse actions I experienced stemmed directly from my protected activity in challenging judicial misconduct.

This whistleblower retaliation creates an independent constitutional claim that is not subject to Rooker-Feldman. As the Ninth Circuit recognized in Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003), Rooker-Feldman does not bar federal claims that are "independent" of the state court judgment, even if they "deny a legal conclusion that the state court has reached."

The district court's failure to recognize the manifest injustice and whistleblower retaliation aspects of this case constitutes a substantial legal error that cannot be deemed frivolous.

# VI. IFP APPLICATION AND DISTRICT COURT'S IMPROPER DENIAL

The district court denied my IFP application, claiming I listed income and expenses as $0 without the required "particularity, definiteness and certainty." This denial appears to be a procedural mechanism to prevent substantive review of legitimate claims.

## A. Financial Hardship Documentation

1. **Zero Income Reality**: Following my September 29, 2021 STEMI heart attack, I have been unable to work, resulting in zero personal income. This is documented by medical records and physician statements including Dr. Angelica Acosta's letter

dated May 8, 2024, which confirms I am unemployable due to chronic heart issues, PTSD, and depression.

2. **Public Assistance**: I receive approximately $250 monthly in SNAP benefits and qualify for full Medi-Cal coverage.

3. **Parental Support**: My parents pay essential expenses directly rather than giving me money. This arrangement makes it impossible to provide the exact dollar amounts the district court demanded since I never receive or control these funds.

4. **Assets and Debts**: I own only a non-operational 2004 Honda Accord valued at $2,500, which has been unregistered since 2021. I have accumulated over $60,000 in debt and am facing bankruptcy.

The Supreme Court has held that IFP status should be granted where an affiant shows they "cannot pay the court costs and still afford the necessities of life." Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948). **In Adkins, the Supreme Court specifically held that one need not "contribute to payment of costs, the last dollar they have or can get" to qualify for IFP status. My documented zero income, SNAP eligibility, and catastrophic medical condition make it impossible to pay the $605 fee while maintaining basic subsistence.**

The Ninth Circuit has similarly recognized in **O'Loughlin v. Doe, 920 F.2d 614, 616 (9th Cir. 1990)** that IFP status should be granted "if [a plaintiff] submits an affidavit showing he cannot pay the filing fee." In **Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1307 (11th Cir. 2004)**, the court specifically recognized that "A person's medical condition is relevant to IFP determination when it affects ability to earn income."

Additionally, the Supreme Court has established a high bar for dismissing claims as frivolous in the IFP context. In **Nietzke v. Williams, 490 U.S. 319, 325 (1989)**, the Court held that a claim is frivolous only "where it lacks an arguable basis either in law or in fact." The Ninth Circuit reinforced this in **Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984)**, stating that "A court may dismiss as frivolous complaints... whose factual contentions are clearly baseless."

**The Ninth Circuit in Escobedo v. Applebees, 787 F.3d 1226, 1234 (9th Cir. 2015) held that "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." My application clearly meets this standard, as I cannot even afford necessities without assistance.**

The district court's demand for greater "particularity" from an applicant with $0 income, documented medical disability, and reliance on SNAP benefits creates an impossible standard that effectively denies access to the courts. This is particularly problematic given that my financial situation makes it impossible to provide the exact accounting the court demands for support I don't directly receive.

## B. IFP Issues in Ninth Circuit Filing

My IFP application to the Ninth Circuit (filed March 18, 2025) faces similar challenges. The nature of my financial support—parents paying expenses directly rather than giving me money—makes it difficult to provide the specific dollar amounts this court expects. I've been as transparent as possible about my zero income, medical disability, reliance on SNAP benefits, and dependence on my parents for basic necessities.

The law doesn't require absolute destitution to qualify for IFP status, yet the courts' focus on precise accounting of support I don't directly receive creates an unreasonable barrier to accessing justice, particularly given my documented medical condition and economic hardship. This barrier constitutes a significant due process concern that should be addressed by this Court.

# VII. RELEVANCE TO DEPARTMENT OF JUSTICE GUIDANCE

On April 20, 2023, the U.S. Department of Justice issued a comprehensive "Dear Colleague Letter" addressing constitutional and statutory obligations regarding the imposition and enforcement of fines and fees. This official DOJ guidance directly relates to the issues raised in this appeal regarding DCSS's enforcement practices and systematic violations of federal requirements.

**The DOJ's guidance explicitly addresses situations like mine where "the detrimental effects of unjust fines and fees fall disproportionately on low-income communities and people of color, who… may already face economic obstacles arising from discrimination, bias, or systemic inequities." The systematic enforcement of impossible obligations against a medically disabled person exemplifies exactly the concerns the DOJ highlights.**

The DOJ letter outlines seven constitutional principles directly relevant to this appeal:

1. "The Eighth Amendment prohibits the imposition of fines and fees that are grossly disproportionate to the severity of the offense" - This applies to DCSS's

enforcement of obligations against an appellant with documented $0 income, medical disability, and SNAP benefits eligibility. Under Timbs v. Indiana, 139 S. Ct. 682 (2019), the Excessive Fines Clause "limits the government's power to extract payments."

2. "The Fourteenth Amendment prohibits incarceration for nonpayment of fines and fees without first conducting an ability-to-pay determination" - DCSS has systematically ignored my documented inability to pay, violating principles established in Bearden v. Georgia, 461 U.S. 660, 671 (1983) (prohibiting "punishing a person for his poverty").

3. "The Fourteenth Amendment requires the consideration of alternatives before incarcerating individuals who are unable to pay fines and fees" - DCSS has never considered alternatives despite twelve documented requests, violating the framework established in Turner v. Rogers, 564 U.S. 431 (2011).

4. "The Fourteenth Amendment prohibits the imposition of fines and fees that create conflicts of interest" - Both Ratekin and Schulman served as temporary judges at DCSS, creating the exact type of conflict addressed in Tumey v. Ohio, 273 U.S. 510, 523 (1927) and Ward v. Village of Monroeville, 409 U.S. 57 (1972).

5. "The Fourteenth Amendment prohibits conditioning access to the judicial process on the payment of fees by individuals who are unable to pay" - The district court's denial of IFP status despite clear inability to pay creates precisely this prohibition under M.L.B. v. S.L.J., 519 U.S. 102, 119-24 (1996) and Boddie v. Connecticut, 401 U.S. 371, 374 (1971).

This official guidance demonstrates that the issues raised in this appeal are not only non-frivolous but directly align with current federal priorities regarding constitutional compliance in the enforcement of financial obligations.

## VIII. RELEVANT BACKGROUND AND CONTEXT

To understand the full significance of the federal claims, some brief context is necessary. For nearly two years prior to February 2021, I maintained a stable 50/50 custody arrangement with my two children (ages 12 and 14 at that time), supported by three Family Court Services reports and two family court child interviews. The arrangement was working well under the oversight of two previous judges.

This stable family situation was abruptly disrupted when Commissioner Ratekin took over the case on February 4, 2021. Within minutes of her first appearance—before reviewing any evidence or hearing testimony—Ratekin announced her predetermined intention to

place my teenage son in a "residential facility." This extraordinary action, taken without any supporting evidence and contrary to two years of successful 50/50 custody, marked the beginning of a coordinated campaign that has since cascaded into multiple lawsuits.

What this case fundamentally represents is whistleblowing against a "kids for cash" scheme similar to those that have resulted in criminal prosecutions of judges in other jurisdictions. The evidence shows that opposing counsel, an ethics-deprived "family" law attorney determined to win at all costs rather than act in the children's best interests, conspired with Commissioner Ratekin to place my son in a residential facility without any legitimate justification. When I refused to surrender my son and blew the whistle on this scheme, a coordinated campaign of retaliation began that continues to this day.

The depth of interconnected relationships reveals a closed system designed to protect insiders at the expense of due process:

1. Commissioner Ratekin's supervising judge's wife was friends and co-workers with my ex-wife, creating an undisclosed personal connection to a party in the case
2. The subsequent supervising judge was a founding member of opposing counsel Dave Schulman's law firm, establishing another layer of conflict
3. The head District Attorney is married to a district judge who until recently served as presiding judge over the district court
4. Both Commissioner Ratekin and opposing counsel Schulman served as temporary judges at DCSS during the relevant time period

After Ratekin finally recused, Judge Alksne took over and railroaded through four hearings and a trial immediately after I had nearly died from a STEMI heart attack, despite my proper filing of ADA paperwork requesting reasonable accommodations and extension of time. Judge Alksne was so incensed that I had refused to comply with Ratekin's pyramided orders regarding my son that she issued a punitive judgment that:

1. Awarded me zero portion of retirement accounts after a 15-year marriage
2. Gave me zero custody of my children despite my role as a loving stay-at-home father for nearly a decade
3. Based child support on Schulman's knowingly false income documentation

I possess recorded evidence that has never been examined by any court, including:

1. Recordings documenting Commissioner Ratekin's stated intention to place my son in a "facility" before reviewing any evidence or hearing testimony, demonstrating predetermined outcomes without due process

2. Recorded statements from District Attorney Investigator Luis Pena explicitly acknowledging that "family court lawyers were pissed off and not working in [my] son's best interests" and that if the case "went to trial, [I] would win"

This evidence demonstrates that my case originated not from legitimate legal concerns but from retaliation by a "close unit of players" all looking out for each other when I refused to surrender my son to be used as leverage in divorce proceedings. The systematic refusal of every court to examine these recordings speaks to a coordinated effort to prevent public disclosure of judicial misconduct.

# IX. CHRONOLOGICAL EVIDENCE OF SYSTEMATIC FEDERAL VIOLATIONS

The following documented timeline demonstrates DCSS's systematic violations of federal regulations:

- **September 29, 2021**: I suffered a life-threatening STEMI heart attack (with 6% survival rate), creating a disability under the ADA that triggered accommodation requirements. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 801 (1999).
- **November 29, 2021**: Trial conducted without my participation during medical recovery. Judge allowed opposing counsel's extraordinarily broad motion in limine designed to prevent any meaningful appeal by excluding virtually all relevant evidence.
- **January 24, 2022**: Default judgment entered in register of actions despite void status under Lavi.
- **February 9, 2022**: Default judgment improperly served without required exhibit A (Dissomaster calculation), rendering service legally defective under California Code of Civil Procedure §§ 585(b) and 587.
- **February 17, 2022**: DCSS employee Heidy Toledo-Perez acknowledged potential modification based on health issues and circumstances, confirmed DCSS authority to "review for modification," and promised a 30-day review timeline. This email creates documentary evidence of DCSS's acknowledgment of its federal obligations.
- **February 23, 2022**: I requested case pause pending accurate calculations and emphasized my medical condition affecting employment.
- **February 28, 2022**: DCSS shifted responsibility to family court, contradicting its earlier acknowledgment and federal obligations under 45 CFR § 303.8(b)(2).

- **July 27, 2022**: I filed formal motion for stay of collections and requested evidentiary hearing with comprehensive medical documentation.
- **September 15, 2022**: I submitted formal hearing request and filed complaint resolution form referencing six months of ignored modification requests.
- **October 31, 2022**: DCSS finally provided Notice of Complaint Resolution but failed to address medical documentation or explain 10-month delay.
- **December 26, 2022**: I documented a full year of modification attempts, including all medical submissions and DCSS's failure to follow Title IV-D requirements.

This documented pattern of communications establishes that DCSS had full knowledge of my medical circumstances, received proper documentation for modification, made promises about review and hearings that were not honored, provided incorrect information about jurisdictional requirements, and systematically failed to fulfill its Title IV-D obligations despite multiple requests.

## X. EVIDENCE AVAILABLE TO SUPPORT CLAIMS

I respectfully inform the Court that comprehensive, organized documentation is readily available to substantiate each claim presented in this appeal. This documentation includes, but is not limited to:

1. **Title IV-D Violation Evidence**:
   a. Complete email correspondence with DCSS spanning December 2021 through December 2022, documenting twelve separate modification requests that were systematically ignored
   b. February 17, 2022 email from DCSS employee Heidy Toledo-Perez explicitly acknowledging DCSS authority to "review for modification" and promising a 30-day review timeline
   c. DCSS complaint resolution documentation showing administrative acknowledgment of issues
2. **Jurisdictional Defect Evidence**:
   a. Complete court file showing timely filing of CCP § 170.6 challenge (Exhibit A to Motion for Mandatory Jurisdictional Adjudication)
   b. Court transcript dated February 4, 2021, proving no substantive proceedings occurred prior to the challenge (Exhibit B to Motion)
   c. Register of actions confirming timeline of proceedings
3. **Fraud Upon Court Evidence**:

      a. Full transcript of DAI Pena interview acknowledging that I would "likely win" at trial and the family court lawyers were "pissed off" and not working in my sons best interests.

      b. Documentation of my actual work history and lack of licensing

      c. Medical records documenting heart attack and employment limitations

4. **Medical Documentation**:

      a. Complete medical records from September 29, 2021 STEMI heart attack with 6% survival rate

      b. Medical records from my second STEMI heart attack on December 10, 2024, which was directly precipitated by the stress of these proceedings

      c. Dr. Angelica Acosta's May 8, 2024 physician statement confirming ongoing disability

      d. Cardiologist reports documenting continued cardiac issues and work restrictions

5. **Financial Hardship Evidence**:

      a. SNAP benefits verification and Medi-Cal eligibility documentation

      b. Bank statements confirming zero income

      c. Documentation of parental support arrangement for basic necessities

**Each claim is supported by contemporaneous documentation, much of which comes from DCSS's own records and communications. This is not speculative evidence but rather concrete documentation of systematic federal violations that can be verified through normal discovery procedures.**

While I understand comprehensive evidence presentation occurs during merits review rather than at this preliminary stage, I affirm that substantial documentation exists to support each allegation made in this appeal. This evidence is systematically organized, preserved, and ready for production at the appropriate procedural stage. The existence of this extensive documentation further demonstrates that this appeal raises substantial, non-frivolous legal questions deserving of full consideration.

## XI. CONCLUSION

This appeal presents substantial legal questions regarding:

1. The proper application of Rooker-Feldman to a fundamental jurisdictional defect that renders the underlying judgment void ab initio

2. The fraud-upon-the-court exception to Rooker-Feldman based on Schulman's knowingly false income projections
3. DCSS's systematic violations of its Title IV-D obligations
4. The manifest injustice exception for a case involving retaliation against a whistleblower who exposed judicial misconduct

These questions are not clearly resolved against me and are supported by significant evidence that has never been examined by any court. The district court's own dismissal order acknowledges in footnote 2 that "any causes of action independent of the divorce judgment may be the source of a separately filed complaint." My appeal raises precisely such independent claims based on DCSS's systematic violations of its Title IV-D obligations, the jurisdictional defect rendering the underlying judgment void, and the fraud upon the court through knowingly false income projections.

The procedural barriers that have prevented any substantive review of my claims—including the district court's demand for impossible financial particularity despite documented zero income and medical disability—raise serious due process concerns that this Court should address.

For these reasons, this appeal is not frivolous under 28 U.S.C. § 1915(e)(2), and I respectfully request that the Court grant my IFP application and allow the appeal to proceed on its merits.

Respectfully submitted,

Robert Emert

Appellant, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029